IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JASON PETERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 20-cv-727-DWD |
| ) | |
| JEANIE JAMES, ) | |
| DARIN WELLS, ) | |
| STEPHANIE WAGGONER, and ) | |
| JOHN DRANNAN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

In this matter, Plaintiff Jason Peterson asserts that Defendant John Drannan, a staff member of the Illinois Department of Corrections ("IDOC"), violated his Eighth Amendment rights by holding him in confinement for 382 days beyond his scheduled parole date because Defendant refused to process his release plan (Doc. 1; Doc. 50). Now before the Court is the Motion for Summary Judgment (Doc. 48) and Memorandum in Support (Doc. 49) filed by Defendants Jeanie James, Darin Well, Stephanie Waggoner, and John Drannan. Plaintiff filed a Memorandum in Opposition (Doc. 50). Defendant Drannan filed a Reply (Doc. 51), to which Plaintiff filed a Sur-Reply (Doc. 52). For the reasons detailed below, the Motion will be granted.

### Preliminary Rulings

On July 25, 2022, Plaintiff filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 50). In this Memorandum, Plaintiff stated that he

1

"does not oppose the grant of summary judgment to Defendants Jeanie James, Darin Wells, and Stephanie Waggoner." (Doc. 50). He also "does not object to dismissal of any Fourteenth Amendment claim" (Doc. 50). Based on these representations, the Motion for Summary Judgment (Doc. 48) is **GRANTED** as to the claims against Defendants James, Wells, and Waggoner.

As for the dismissal of Plaintiff's Fourteenth Amendment claims, the Seventh Circuit has clarified that to dismiss claims or parties from an action that will otherwise continue, a plaintiff must file an amended complaint. *See Taylor v. Brown*, 787 F.3d 851, 857–58 (7th Cir. 2015); Fed. R. Civ. P. 41 (allowing for dismissals of "actions" not "parties" or "claims"). While the Court acknowledges the plain reading of Rule 41, in this limited instance, and given the procedural posture of this case, judicial economy counsels in favor of allowing Plaintiff to voluntarily dismiss his Fourteenth Amendment claims without filing an amended complaint. Accordingly, Plaintiff's Fourteenth Amendment claims are **DISMISSED, without prejudice.** The Court addresses Plaintiff's remaining Eighth Amendment claim against Defendant Drannan below.

## Background

The following facts taken from the record are undisputed except where otherwise noted. On August 18, 2017, Plaintiff entered the custody of IDOC (Doc. 49-1). He transferred to Vandalia Correctional Center ("Vandalia") on August 30, 2017 (Doc. 49-2, p. 17). On December 24, 2018, Plaintiff became eligible for mandatory supervised release ("MSR", or occasionally referred to herein as "parole") (Doc. 49-2, p. 33). Plaintiff's MSR conditions required Plaintiff to have a GPS monitoring bracelet, and prohibited Plaintiff

from associating or living with other convicted felons, among other restrictions (Doc. 49-2, pp. 21-22; Doc. 52-1).

Plaintiff desired to be released on MSR to a faith-based halfway house in Aurora, Illinois called Wayside Cross Ministries (Doc. 49-1, p. 36).[1] Plaintiff discussed this desire with his counselor, who told Plaintiff to submit it as a parole site (Doc. 50-5, pp. 37-40). At some point, Defendant's counselor also told him that he could not parole anywhere besides a residential home site with a landline because of the GPS monitoring requirement in his MSR conditions (Doc. 50-5, p. 42). In June or July 2018, Plaintiff submitted his first Request for an MSR Plan listing Wayside Ministries as his requested parole site (Doc. 50-5, p. 43). Plaintiff continued to submit forms requesting Wayside Ministries until December 2018 (Doc. 50-5, p. 43). Plaintiff estimates that he submitted more than 10 requests (Doc. 50-5, pp. 43-44). All of Plaintiff's requests were denied (Doc. 50-5, p. 50). Plaintiff stated that the requests were denied because Defendants told him he could not go to a halfway house or anywhere but a residential home site with a landline (Doc. 50-5, p. 60).

On December 11, 2018, Plaintiff submitted a grievance asking for Vandalia to (1) contact Wayside Ministries to confirm it as an acceptable parole site, and (2) to approve Plaintiff's request to parole to Wayside Ministries (Doc. 49-4). Defendant Drannan denied the grievance as moot, stating: "Per IDOC policy: GPS is not allowed to parole to anywhere but a home site. No halfway house of any kind." (Doc. 49-4). Plaintiff appealed

---

[1] The parties occasionally refer to Wayside Cross Ministries as "Wayside" or "Wayside Ministries."

to the grievance officer, who recommended that the grievance be denied because IDOC policy did not allow GPS parole "to anywhere but a home site." (Doc. 49-4). The grievance officer also indicated that Plaintiff could continue to submit home sites which would be entered and checked for approval (Doc. 49-4). On December 13, 2018, the Chief Administrative Officer signed off on the grievance response, concurring with the decision (Doc. 49-4). Plaintiff did not appeal this grievance to the Administrative Review Board or submit another grievance to anyone else at IDOC (Doc. 50-5, p. 60).

Plaintiff knew he could not be released to MSR without an approved parole site (Doc. 50-5, pp. 56-57). On December 24, 2018, Plaintiff was informed that he was getting "re-violated" because he could not provide an approved parole site (Doc. 50-5, p. 56). Between December 24, 2018 and September 2019, Plaintiff did not submit another official request for an MSR plan for Wayside Ministries (Doc. 50-5, p. 60). He did submit various proposed residential sites naming both individuals that he knew and people he did not personally know (Doc. 50-5, pp. 57, 59-60), all of which were denied. Plaintiff did not seek any additional assistance from Defendants or IDOC concerning his placement because he was "determined to go to Wayside" (Doc. 50-5, pp. 61-62) ("Q. Okay. So was your goal to go to Wayside Ministries, or was your goal just to get out of IDOC custody? [Plaintiff]. No. My goal was to go to Wayside").

On September 18, 2019, Plaintiff transferred to Taylorville Correctional Center (Doc. 49-1, 49-2, p. 22). While at Taylorville Correctional Center, Plaintiff submitted an MSR plan requesting Waysides Ministries, and this plan was approved (Doc. 50-7). Plaintiff paroled to Wayside Ministries on January 10, 2020 (Doc. 49-1; Doc. 50-7).

At all times relevant to Plaintiff's Complaint, Defendant Drannan was assigned to field services at Vandalia (Doc. 50-1). Counselors assigned to field services differed from assigned counselors based in the prisoner's living unit because field services "deals entirely with parole and guys that are discharging or going on parole" (Doc. 50-1, p. 25). One of Drannan's job duties was to submit proposed host sites to the Illinois Department of Corrections Parole Office for approval (Doc. 50-1, pp. 23-24). However, the Parole Office was charged with investigating and approving or denying the proposed sites (Doc. 50-1, p. 23).

Defendant Drannan testified about the IDOC's procedures concerning MSR/parole (Doc. 50-1). He described the process for prisoners to submit a MSR or "residence plan", stating:

> [W]hat happens is he will submit a host site. Like someplace he's wanting to live like a person and we submit it into the computer and then it gets assigned to a parole agent by their parole office and then the parole agent investigates and they make the determination whether or not they're approved or not.
> . . .
> [Prisoners] get these forms either by request or when they go to parole school and at Vandalia they have a place for two different addresses. They can submit as many as they want to but that's what they submit. Once it comes back to the field services in the mail, we enter it into the system and then we assign it to the appropriate parole office.

(Doc. 50-1, pp. 23-24). Once the prisoner's form is received by field services, a counselor enters it into the computer system, named "Offender 360" (Doc. 50-1, pp. 24-25). Drannan stated that the only time a counselor would not forward a proposed plan to parole would be if the offender requested to be placed with a person who was a victim of their crime (Doc. 50-1, p. 30). In those circumstances, the counselor would "[p]ut it in the computer

5

and deny it for that reason and then notify the offender or individual in custody." (Doc. 50-1, p. 30).

Drannan testified that he "always" entered MSR plan requests into the computer to send it to parole for review (Doc. 50-1, p. 30). In addition to the MSR plans submitted by prisoners, it was Drannan's normal practice to create or input "a homeless plan" for any offender with an approaching MSR date (Doc. 50-1, pp. 57-58; Doc. 50-2, pp. 5-6). A "homeless plan" would send notice to the parole office that an offender needed a placement (Doc. 50-1, pp. 36-37). The parole resource group ("PRG"), a division of the parole office, would then find an appropriate placement for the offender (Doc. 50-1, pp. 42, 63) (stating that "PRG has absolute authority for halfway house placement[s]"); (*see also* Doc. 50-2, pp. 5-6). Plaintiff's Cumulative Counseling Summary indicates that he was classified as "homeless" in November 2018 (*See* Doc. 50-6, p. 6).

Drannan testified that it was his understanding that there were only two halfway houses in the State of Illinois accepting GPS monitoring (Doc. 50-1, p. 47). He also testified that it was his understanding that PRG had "complete discretion" on all halfway house placements, so if an offender wanted to request a specific halfway house, the offender would need to go through PRG (Doc. 50-1, p. 48). However, Drannan clarified that the field services office is not required to forward specific requests for halfway house placements to PRG because "it is not in their prerogative to choose where they go", referring to the authority of PRG to decide halfway house placements (Doc. 50-1, pp. 48-49). Instead, because halfway house placements were PRG's responsibility, when field services received a request naming a specific halfway house, the field services officer

6

would put a homeless plan in the computer, and PRG would then be responsible for finding an appropriate placement. (Doc. 50-1, pp. 58-58) ("Placement for a halfway house is PRG's responsibility. All requests come to the field services office but it doesn't matter. Field services' responsibility is only to put the plan in the computer, the homeless plan. And then the PRG it's their responsibility to find placement for them."). Drannan also testified that he had spoken with representatives from Wayside Ministries before, and it was his understanding that Wayside could not accept offenders requiring GPS monitoring (Doc. 50-1, p. 64).

Plaintiff's Cumulative Counseling Summary reveal multiple interactions between Plaintiff and his correctional counselor concerning his MSR plans (Doc. 50-6). On December 3, 2018, Plaintiff's records provide that Plaintiff's correctional counselor "informed offender he cannot parole to a halfway house or shelter on GPS." (Doc. 50-6, p. 5). In addition to his counselor, Plaintiff had multiple interactions with Defendant Drannan concerning his MSR plans (Doc. 50-6). The following entries appear on Plaintiff's Cumulative Counseling Summary:

> 2/7/2019 13:16:11 FIELD SERVICES OFFICE/VAN Personal Other DRANNAN II, JOHN A., Correctional Counselor II Comments: NOTE TO OFFENDER: You have been allowed to resume parole with an approved placement site. Parole has been notified of the PRB's decision and your release is at parole's disrection [*sic*], at this time.
>
> 2/8/2019 15:47:15 DORM W – WORK CAMP/VAN Personal Other DRANNAN II, JOHN A., Correctional Counselor II Comments: NOTE TO OFFENDER: Your most recent site has been denied. Per the direction of parole, please stop submitting addresses that are not legitimate, in that either the people don't know you or are not aware of your intention to have their addresses.

7

5/23/2019 11:52:24 FIELD SERVICES OFFICE/VAN Personal Other DRANNAN II, JOHN A., Correctional Counselor II Comments: NOTE TO OFFENDER: You still have two sites pending. Both sites have been contacted by parole. Both are pending

7/3/2019 13:14:14 FIELD SERVICES OFFICE/VAN Personal Other DRANNAN II, JOHN A., Correctional Counselor II Comments: Offender asked about friend/parole site; NOTE TO OFFENDER: Your host site stopped returning phone calls to the agent investigating. You site was denied and will not be re-investigated.

7/9/2019 13:19:15 FIELD SERVICES OFFICE/VAN Personal Other DRANNAN II, JOHN A., Correctional Counselor II Comments: Offender asked about friend/parole site AGAIN; NOTE TO OFFENDER: As you were advised on 7/3/2019 - Your host site stopped returning phone calls to the agent investigating. You site was denied and will not be re-investigated.

7/30/2019 10:40:43 FIELD SERVICES OFFICE/VAN Personal Other DRANNAN II, JOHN A., Correctional Counselor II Comments: Offender submitted an address for Jonathan Orozio. NOTE TO OFFENDER: This host refused your submission. He also acted as if he didn't really know you. Please refrain from submitting addresses that you do not have actual contact with, or people who do not want you to parole to their sites.

8/13/2019 12:35:09 DORM W – WORK CAMP/VAN Personal Face To Face DRANNAN II, JOHN A., Correctional Counselor II Comments: NOTE TO OFFENDER: Regarding your questions about GPS, have your potential host site call me at the facility. At least this way, I can answer their questions directly and have acknowledgement that they know you and are willing to consider having you.

(Doc. 50-6, pp. 2-4).

## Legal Standard

Summary judgment is proper if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and

8

they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the non-moving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

"[T]he Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but *only* that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Stepney v. Johnson*, No. 14 C 3548, 2017 WL 3394740, at *3 (N.D. Ill. Aug. 4, 2017) (citing *Hudson v. McMillian*, 503 U.S. 1, 20 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause") (internal markings and citation omitted).

To prevail on his Eighth Amendment claim, Plaintiff must "prove that the defendants held him beyond the term of his incarceration without penological justification, and that the prolonged detention was the result of the defendants' 'deliberate indifference.'" *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (internal citation omitted). Deliberate indifference "l[ies] somewhere between the poles of

9

negligence at one end and purpose or knowledge at the other." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *in accord Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). To establish deliberate indifference, defendants "must meet 'essentially a criminal recklessness standard, that is, ignoring a known risk.'" *Armato*, 766 F.3d at 721 (quoting *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013); *Bd. v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005); *see also Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) ("A state officer is deliberately indifferent when he does nothing, or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred.").

Plaintiff alleges that Defendant Drannan was deliberately indifferent because he failed to forward Plaintiff's specific request to be paroled to Waysides Ministries to the appropriate officials for review based on a non-existent rule regarding GPS monitoring (Doc. 50). Plaintiff admits that Drannan was not responsible for approving or denying Plaintiff's MSR plans, however, Plaintiff maintains that Drannan showed deliberate indifference because he obstructed the review process by not forwarding Plaintiff's MSR request to parole for review. Plaintiff also argues that Drannan's justification for not forwarding the MSR plan for review – i.e., that Wayside Ministries was not an appropriate site because it could not accommodate Plaintiff's MSR requirement of GPS tracking – was erroneous because Plaintiff's later request to parole to Wayside Ministries was approved by the parole office.

Drannan denies that he failed to forward Plaintiff's parole requests for review. He further argues that his actions in forwarding Plaintiff's requests and entering plans based on his understanding of the requirements of offenders with GPS monitoring cannot show

10

misconduct, let alone deliberate indifference, because only the parole office had authority to release Plaintiff on MSR. Plaintiff contends that this dispute of fact, *i.e.*, whether Drannan forwarded Plaintiff's specific request naming Wayside Ministries to the parole office for review, is material so to overcome summary judgment. However, "[t]he mere existence of a scintilla of evidence in support of" Plaintiff's position is "insufficient; there must be evidence on which the jury could reasonably find for" him. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)); *see Dorsey v. Morgan Stanley*, 507 F.3d 624, 628 (7th Cir. 2007). Here, there is simply no evidence that would lead a reasonable fact finder to conclude that Drannan acted with deliberate indifference.

The record evidence demonstrates that Plaintiff and Drannan had multiple interactions concerning Plaintiff's MSR plans. Indeed, Drannan relayed communications from the parole office to Plaintiff (Doc. 50-6, pp. 2-4), and spoke with Plaintiff about his MSR plans and requirements. Drannan responded to Plaintiff's grievance based on his understanding of IDOC polices (Doc. 49-4) and knowledge of the availability and requirements for halfway house placements in Illinois (Doc. 50-1). Drannan further asked Plaintiff to have his potential host site call Drannan at the facility to answer their questions:

> 8/13/2019 12:35:09 DORM W – WORK CAMP/VAN Personal Face To Face DRANNAN II, JOHN A., Correctional Counselor II Comments: NOTE TO OFFENDER: Regarding your questions about GPS, have your potential host site call me at the facility. At least this way, I can answer their questions directly and have acknowledgement that they know you and are willing to consider having you.

(Doc. 50-6, pp. 2-4).

While Plaintiff complains that there is no evidence that Drannan relayed his specific MSR request for Wayside Ministries to the parole office, he fails to account for the other actions Drannan took to assist Plaintiff in securing a parole site, even though Drannan was not ultimately responsible for parole decisions and had no authority to approve Plaintiff's placement. Specifically, the record evidence indicates that Plaintiff submitted multiple MSR plans to the Field Services Office which were reviewed by the parole office (Doc. 50-6). Plaintiff also had a homeless plan on file (*See* Doc. 50-6, p. 6), which notified the parole office that Plaintiff was in need of a placement (Doc. 50-1, pp. 36-28, 42, 63). Moreover, the record indicates that Drannan tried to assist Plaintiff in the release process by asking Plaintiff to submit additional addresses, relaying information from the parole office, and having Plaintiff direct his proposed sites to call Drannan for additional information (Doc. 50-6). These actions do not evidence deliberate indifference. *See Figgs*, 829 F.3d at 903 ("A state officer is deliberately indifferent when he does nothing, or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred.").[2]

---

[2] *See also Armato*, 766 F.3d at 721 (plaintiff "failed to show that the defendants deliberately held him beyond the term of his incarceration;" defendants "believed releasing [plaintiff], a convicted sex offender, without a term of MSR, was contrary to state law"); *Stepney*, 2017 WL 3394740, at *3; *Perrault v. Wisconsin*, No. 15-CV-144-BBC, 2015 WL 5032656, at *3 (W.D. Wis. Aug. 25, 2015) ("Deliberate indifference means that the officials were aware of the sentencing problem and the risk of unwarranted punishment but failed to act or took ineffectual action under the circumstances."); *Crayton v. Duncan*, No. 15-CV-399-NJR, 2015 WL 2207191, at *3 (S.D. Ill. May 8, 2015); *Shesler v. Sanders*, No. 13-CV-394-JDP, 2014 WL 5795486, at *6 (W.D. Wis. Nov. 6, 2014) (collecting cases, and reasoning that without evidence that defendants "ignored their duty" or "intentionally chose not to review the sentence", at most defendants showed "garden-variety negligence" which is not actionable under § 1983).

Accordingly, no reasonable fact finder could conclude that Defendant held Plaintiff beyond his incarceration term without penological justification and that the prolonged detention was the result of his deliberate indifference. Drannan is therefore entitled to summary judgment. Because the Court finds that Defendant Drannan is entitled to summary judgment on his deliberate indifference claim, the Court does not address his qualified immunity argument.

## Conclusion

For these reasons, Defendants' Motion for Summary Judgment (Doc. 48) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in Defendants' favor and against Plaintiff, and to close this case.

**SO ORDERED.**

Dated: October 6, 2022

DAVID W. DUGAN
United States District Judge